UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Fernando Contreras Alcala, | ) | Civil Action No.: 4:14-cv-4176-RBH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Claudia Garcia Hernandez, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**ORDER FOR CLAUDIA GARCIA HERNANDEZ TO APPEAR AND SHOW CAUSE;
TEMPORARY RESTRAINING ORDER;
ORDER DENYING REQUEST FOR CUSTODY WARRANT;
ORDER TAKING JUDICIAL NOTICE OF MEXICAN LAW; AND
ORDER DENYING MOTION TO SEAL**

This matter was initiated by a Verified Petition filed pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9011, formerly cited as 42 U.S.C. §§ 11601-11611.

This Court has jurisdiction over this case pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction). Venue is proper pursuant to 22 U.S.C. § 9003(b) and 28 U.S.C. § 1391(b).

Pending before the Court are: 1) Petitioner's [Docket Entry #5] Motion for Temporary Restraining Order and Application for a Custody Warrant and Request for Scheduling of an Expedited Hearing; 2) Petitioner's [Docket Entry #6] Motion to Seal; and 3) Petitioner's [Docket Entry #7] Motion to Take Judicial Notice of Mexican Law.

The Court conducted an *ex parte* hearing on October 28, 2014, at 4:00 p.m. and due to the unusual nature of the matter, legal issues involved, and the extensive filings, the Court took the matter under advisement.

In his Motion [Docket Entry #5] for Temporary Restraining Order, Petitioner Fernando Contreras Alcalá ("Father"), seeks: 1) the issuance of a restraining order preventing Respondent Claudia Garcia Hernandez ("Mother") from leaving the jurisdiction along with a Rule to Show Cause requiring Mother to appear at a hearing to show cause why the minor children should not be returned to Mexico; 2) the issuance of a warrant for the physical custody of minor children; and 3) an order scheduling an expedited hearing on the merits of Father's Verified Petition pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), the International Child Abduction Remedies Act (the "ICARA"), 22 U.S.C. §§ 9001-9011, and Federal Rule of Civil Procedure 65.

In the Motion [Docket Entry #6] to Seal, Petitioner asks the court to seal any warrant for physical custody of the minor children issued along with an additional document submitted to chambers, which identifies the minor children by name and date of birth.

Finally, the Motion [Docket Entry #7] to take Judicial Notice of Mexican Law requests the court take judicial notice of Mexican law as reflected in Petitioner's expert affidavit [Docket Entry #7-2] and Article 15 Declaration made by Maria Cristina Oropeza Zorrilla, Director of Family Law for the Mexican Central Authority. [Docket Entry #7-3].

Having conducted an *ex parte* hearing on the Motions and considered the arguments of Father's counsel and the entire record, the Court hereby **GRANTS in part and DENIES in part** Petitioner's [Docket Entry #5] Motion for Temporary Restraining Order and Application for a

Custody Warrant and Request for Scheduling of an Expedited Hearing. The Court will issue a Temporary Restraining Order and Order Respondent to Appear and Show Cause but declines to issue the requested custody warrant for the children. The Court will schedule an expedited hearing on the request for a preliminary injunction[1] but denies Petitioner's request to consolidate the final merits hearing into the preliminary injunction hearing so as to provide the Respondent with adequate time to respond to the matters before the court and retain counsel. Rule 65(b)(3) requires an expedited preliminary injunction hearing but recognizing the necessity of this Order being translated for the benefit of Respondent, the Court has scheduled the preliminary injunction hearing for Thursday, November 6, 2014, at 9:30 a.m. at the Florence federal courthouse.

The Court **DENIES** Petitioner's [Docket Entry #6] motion to seal as moot and **GRANTS** Petitioner's [Docket Entry #7] motion to take judicial notice of Mexican Law for purposes of this Temporary Restraining Order.

I.    **Father's Verified Petition**

The evidence of record presented by Father indicates that on June 17, 2013, Respondent Claudia García Hernández ("Mother"), who is the mother of F.C.G., a ten-year old Mexican national, and A.C.G., a two-year old Mexican national (collectively, the "Children"), wrongfully removed the Children, against Father's express wishes, from their familial home in Mexico and brought the children into the United States illegally and without prior notice.[2]  Further, the evidence

---

[1]     Under Rule 43(c), the Court may rely on affidavits or oral testimony at the preliminary injunction motion hearing. Fed. R. Civ. P. 43(c).

[2]     Petitioner alleges in his Verified Petition that "sometime in 2005 or 2006 Grandmother and Aunt entered the United States illegally and settled in Florence, South Carolina, where they own a small business. Shortly thereafter, Grandmother and Aunt began requesting Mother and the Children also enter the country illegally to join them.

3

presented by Father shows that he is listed on the Children's birth certificates, and has sufficient parental custody rights under the Hague Convention such that Mother's removal of the Children from Mexico without his consent wrongfully deprived him of his parental rights that he was exercising just prior to the removal. Father has indicated to the Court that Mother has, in violation of his expressed direction to the contrary, brought the Children into the United States illegally, knowing that Father instead wished for the family to stay in Mexico. After their alleged abduction, Father has alleged that it took more than a year to locate the Children who were being hidden in Florence, South Carolina by Mother, even with the aid of the State Department and law enforcement. Father has alleged that Mother is in Florence, South Carolina with the Children's grandmother, Lorenza Hernández Pérez, and their aunt, Andrea García Hernández. Father alleges that Mother has other relatives in the United States illegally who are living outside of this judicial district.

## II.     Preliminary Injunction Hearing

In light of Father's contentions in the Verified Petition, the Court has determined that it is necessary to hold a preliminary injunction hearing to determine whether the temporary restraining order should remain in effect pending a full hearing on the merits. The court declines to consolidate the preliminary injunction hearing into the final merits hearing as requested by the Father. The Court anticipates that the Mother will require a reasonable amount of time to prepare for the hearing and retain counsel if desired. The court stresses, however, that the issue of permanent custody of

---

Grandmother offered to pay for a smuggler to bring Mother and the Children into the country." [Docket Entry #1, Verified Petition, at ¶ 23]. While he has made this allegation, he also indicates that he "learned from Mother's family that it is possible Mother and the Children illegally crossed the border with a group of about thirty people, entering Texas around July 11, 2013." *Id*. at ¶ 26.

the Children is not properly before the Court.  *See Bader v. Kramer*, 484 F.3d 666, 670 (4th Cir. 2007) (observing that "a determination on the merits of the parent's underlying custody claim" is "reserved for the courts of the country of habitual residence").[3]

### III.     Provisional Remedies

The Hague Convention is intended "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence."  *Maxwell v. Maxwell*, 588 F.3d 245, 250 (4th Cir. 2009) (emphasis added). To further this intent, courts are called on to preserve the status quo—the return of the child to his home country for further proceedings.  *See Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001).  To accomplish the goal of maintaining the status quo, the Court is empowered to take appropriate measures "to prevent . . . prejudice to interested parties by taking or causing to be taken provisional measures."  Hague Convention, art. 7(b).  These "provisional measures" are available to the court exercising jurisdiction over the action just as if it were the appropriate court under State law—indeed the ICARA requires the court exercising jurisdiction to ensure that the applicable requirements of State law are satisfied.  22 U.S.C. § 9004(b).  Once those requirements are met, the court is permitted to implement all necessary procedures "to prevent the child's further removal or concealment before the final disposition of the petition."  *Id.* § 9004(a).

---

[3] As is now well-established, the Hague Convention does not allow the district court to consider the merits of any underlying custody dispute.  The only inquiry is whether the treaty requires the prompt return of the children to their home country. *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir. 2001) ("Consequently, the scope of a court's inquiry under the Hague Convention is limited to the merits of the abduction claim. As the district court correctly recognized in this action, 'The merits of any underlying custody case are not at issue.'" (citations omitted)); *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) (finding preservation of the status quo the main inquiry under the Hague Convention).

5

Federal courts across the country have used the authority granted to them by § 9004, formerly cited as 42 U.S.C. § 11604, to take provisional measures to ensure that abducted children are not removed from their jurisdiction prior to completion of Hague proceedings. *See*, *e.g.*, *Mauvais v. Herisse*, No. 13-13032-GAO, 2013 U.S. Dist. LEXIS 170901, at *5-6 (D. Mass. Dec. 4, 2013) (prohibiting abductor from removing children from the jurisdiction during the pendency of the proceedings); *Porter v. Gonzalez*, No. 09-0753, 2009 U.S. Dist. LEXIS 53866, at *3 (M.D. Fla. June 24, 2009) (noting in a case arising under the Hague Convention that child's passport was ordered to be surrendered to the clerk of court and respondent was prohibited from removing minor child from the jurisdiction); *Jenkins v. Jenkins*, No. 08-0037, 2008 U.S. Dist. LEXIS 18347, at *2 (S.D. Ohio Feb. 19, 2008) (ordering respondents to surrender passports and prohibiting them from leaving the jurisdiction of the court pending resolution of petition under the Hague Convention), *aff'd*, 569 F.3d 549 (6th Cir. 2009); *Suki v. Kovacs*, No. 95-6805, 1995 U.S. Dist. LEXIS 15867, at *2 (E.D. Pa. Oct. 27, 1995) (observing in a case arising under the Hague Convention that "[o]rdinarily, the court would enter an order requiring respondent to surrender her passport [and] to remain in the Eastern District of Pennsylvania pending a resolution of this action . . . .").

    a. ***Ex Parte* Nature of the Requests**

Father's request for relief was heard on an *ex parte* basis under Federal Rule of Civil Procedure 65(b)(1). Based on Father's allegations and the findings below, I find that relief without notice to Mother is necessary to avoid immediate and irreparable injury, loss, and/or damage if Mother were to be given notice of the proceedings prior to this Order. As required by Rule 65(b)(1)(A), Father's attorney has properly certified to the Court the reasons why notice should not be required.

6

### b. **TRO Prohibiting Mother from Removing Children and Order to Show Cause**

Father has requested the Court issue an order prohibiting Mother from removing the Children from the jurisdiction and a Rule to Show Cause requiring Mother to appear and show cause as to why the Children should not be returned to their home country of Mexico.

The Court finds that Father's request for provisional measures authorized by 22 U.S.C. § 9004 are "analogous to a temporary restraining order . . . ." *Dionysopoulou v. Papadoulis*, 2010 U.S. Dist. LEXIS 138357, at *6 (M.D. Fla. Dec. 23, 2010) (citing *McCullough v. McCullough* (*In re McCullough*), 4 F. Supp. 2d 411, 415 (W.D. Pa. 1998)). Rule 65 of the Federal Rules of Civil Procedure establishes the procedure for federal courts to grant temporary restraining orders and preliminary injunctions. *See* Fed. R. Civ. P. 65.

A plaintiff seeking a temporary restraining order or preliminary injunction must establish all four of the following elements: 1) he is likely to succeed on the merits; 2) he is likely to suffer irreparable harm in the absence of temporary or preliminary relief; 3) the balance of equities tips in his favor; and 4) an injunction or restraining order is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371 (2010), *reissued in part*, 607 F.3d 355 (4th Cir. 2010), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). A plaintiff must make a *clear showing* that he is likely to succeed on the merits of his claim. *Winter*, 129 S. Ct. at 374, 376. Similarly, a plaintiff must make a *clear showing* that he is likely to be irreparably harmed absent injunctive relief. *Id*. at 374-76. Only then may the court consider whether the balance of equities tips in the plaintiff's favor. *See Real Truth*, 575 F.3d at 346-47. Finally, the court must pay

particular regard to the public consequences of employing the extraordinary relief of injunction. *Id*. at 347.

After analyzing these factors below, the Court finds that such provisional measures are authorized and necessary in this case.

### 1. **Likelihood of Father's success on the merits.**

According to the Hague Convention, the removal or retention of a child is wrongful when the removal is in breach of established custody rights defined by the law of the country in which the child was a habitual resident immediately before the removal or retention, and when, at the time of removal, these custodial rights were exercised (either jointly or alone) or would have been so exercised but for the removal. Hague Convention, art. 3.

To secure the return of an abducted child under the Hague Convention, a petitioner must prove by a preponderance of the evidence that the child has been "wrongfully removed." 22 U.S.C. § 9003(e)(1)(A). Specifically, the petitioner must establish that: (1) the child was "habitually resident" in the petitioner's country of residence at the time of removal; (2) the removal was in breach of the petitioner's custody rights under the law of his home state; and (3) that the petitioner had been exercising those rights at the time of removal. *Miller v. Miller*, 240 F.3d 392, 398 (4th Cir.2001) (citing Hague Convention, art. 3, T.I.A.S. No. 11,670, at 2, 19 I.L.M. at 1501). There are a number of defenses to a wrongful removal petition under the Hague Convention. However, at this stage, none have been presented to the Court.

The Court finds that Petitioner Father, at this stage in the proceedings and based on the Verified Petition and exhibits, has clearly demonstrated that he is likely to be successful on the merits.

Father has demonstrated that, based on the unique facts of this case, the Children were "habitually resident" in their home country of Mexico at the time of removal.  The framers of The Hague Convention intentionally left "habitual residence" undefined, and intended that the term be defined by the unique facts in each case. *Maxwell v. Maxwell*, 588 F.3d 245, 251 (4th Cir. 2009); *Whiting v. Krassner*, 391 F.3d 540, 546 (3d Cir.2004).  Federal courts have developed a two-part framework to assist in the habitual residence analysis.  Under this framework, the first question is whether the parents shared a settled intention to abandon the former country of residence. *Maxwell*, 588 F.3d at 251.  The second question under this framework is whether there was "an actual change in geography" coupled with the "passage of an appreciable period of time, one sufficient for acclimatization by the children to the new environment." *Id*.

The Court places great emphasis on paragraph 27 of the Verified Petition, which indicates that Petitioner did not consent or acquiesce in the Mother and Children entering this country. *Maxwell*, 588 F.3d at 252 n.13 (citing *Mozes v. Mozes*, 239 F.3d 1067, 1082 (9th Cir. 2001) (finding that a set of parents did not share an intent to abandon Israel and adopt the United States as their children's residence in part because the father and children traveled to the United States with temporary visas only)).  With respect to the second inquiry related to acclimatization by the children to the new environment, there is no information currently before the court as to whether the children have become acclimatized such that their habitual State of residence has changed to the United States from Mexico.

Based on the broad construction given to the term "rights of custody" under the Hague Convention, *Abbott. v. Abbott*, 560 U.S. 1, 19 (2010), Father—with the help of the expert witness affidavit of Mr. Nuñez Arrealo filed with his Verified Petition—has established a likelihood of

9

success of proving that his *patria potestas* rights under Oaxacan law are sufficient "rights of custody" under the Hague Convention and the Mother's removal of the minor children from Mexico was in breach of those rights.[4] *See Saldivar v. Rodela*, 879 F. Supp. 2d 610, 624-26 (W.D. Tex. 2012); *see also Gavia v. Hernandez*, No. 2:13-cv-00987, 2013 U.S. Dist. LEXIS 165977, at *22-23 (D. Utah Nov. 20, 2013) ("Petitioner's patria potestas rights are rights of custody under the Hague Convention."); *Vazquez v. Vasquez*, No. 3:13-CV-1445-B, 2013 U.S. Dist. LEXIS 184292, at *64-66 (N.D. Tex. Aug. 27, 2013) (finding "Mr. Nuñez Arreola's testimony and interpretation of the civil code to be logical, reasonable, and convincing" and holding the doctrine of patria potestad to be sufficient "rights of custody" under the Hague Convention); *Asuncion Mota v. Rivera Castillo*, 692 F.3d 108 (2d Cir. 2012); *Whallon v. Lynn*, 230 F.3d 450, 455 (1st Cir. 2000).

Father has established the likelihood that he will succeed in proving he was actually exercising his parental and custodial rights immediately prior to the alleged abduction. Father alleged two specific instances, which the Court finds credible and sufficient at this point in the proceedings: (1) being listed as the oldest son's guardian responsible for attending parent-teacher conferences and picking up his report card at school; and (2) taking the youngest child to the doctor the day before the abduction. F.C.G. is ten, and A.C.G. is two—both well under the age of sixteen as required by the Hague Convention. *See* Hague Convention, art. 4.

Additionally, Petitioner has submitted an expert affidavit [Docket Entry #1-11] and Article 15 Declaration made by Maria Cristina Oropeza Zorrilla, Director of Family Law for the Mexican Central Authority certifying that the removal of the minor children was wrongful within the

---

[4] As the Children's habitual residence was in Oaxaca, Mexico, the issue of "custody" must be addressed under Oaxacan law. Hague Convention, art. 31; *Neves v. Neves*, 637 F. Supp. 2d 322, 335 (W.D.N.C. 2009); *see also Whallon v. Lynn*, 230 F.3d 450, 455 (1st Cir. 2000).

meaning of Article 3 of the Hague Convention and Mexican Law. [Docket Entry #1-14]. As Father's expert witness affidavit and Article 15 Declaration establish, the doctrine of *patria potestas* applies here. [Docket Entry #1-11, Nuñez Arreola Aff. ¶ 3]. Because Father is listed on the Children's birth certificates, he is presumed to have *patria potestas* rights over both of the Children. "[B]y presenting the birth certificate of the abducted children, it should be construed as proof of existing parental and custodial rights for both parents unless a judicial order has been issued to the effect of restricting those rights." [Docket Entry #1-14, Article 15 Declaration by Maria Cristina Oropeza Zorrilla, Director of Family Law for the Mexican Central Authority]. This Court is unaware of any judicial order of a Mexican court restricting those rights. Although many rights and responsibilities are triggered by Father possessing *patria potestas* rights, most relevant here is the right to choose the place for the Children to be domiciled. *Asuncion Mota v. Rivera Castillo*, 692 F.3d 108, 117 (2d Cir. 2012) ("These rights and obligations include 'custody of the minors, the authority to raise them, discipline them, represent them in legal acts, administer their property, feed and care for them,' as well as the right to chose the minor's place of domicile."); *Whallon v. Lynn*, 230 F.3d 450, 455 (1st Cir. 2000) ("In sum, the evidence of patria potestas rights under Mexican law leads us to conclude that Whallon's rights were 'rights of custody' under the Convention. While Lynn had actual custody of [the child], both parents exercised patria potestas rights over [the child]."); *Lalo v. Malca*, 318 F. Supp. 2d 1152, 1156 (S.D. Fla. 2004) (analyzing Panamanian *patria potestas* rights and determining they were sufficient rights of custody under the Hague Convention); *Giampaolo v. Erneta*, 390 F. Supp. 2d 1269, 1278 (N.D. Ga. 2004) (determining that petitioner had sufficient "rights of custody" due to petitioner's *patria potestas* rights under Argentine law where the parents were unwed but both acknowledged paternity). Furthermore, Father and Mother were

jointly exercising *patria potestas* rights, and such rights had not been abrogated or rescinded by any judicial order. [Docket Entry #1-11, Nuñez Arreola Aff. ¶ 5]. The Court follows the principle announced in Article 15, finding that "any unilateral decision made by any of the parents in contravention thereof is a breach of the parental and custodial rights attributed to the other parent and falls within the definition of wrongful removal contained in Article 3 of the Convention." [Docket Entry #1-14, Article 15 Declaration by Maria Cristina Oropeza Zorrilla, Director of Family Law for the Mexican Central Authority]. Thus, at this stage of the proceedings, the Father has clearly shown that he will likely be successful on the merits of his Verified Petition.

- **Likelihood of irreparable harm to the Father.**

Based on the foregoing evidence, the Court finds that *ex parte* emergency relief is necessary to prevent irreparable injury. The court observes that allowing the Mother to flee with the Children is contrary to the very purpose of the Hague Convention and ICARA, and would result in irreparable harm. *See In re McCullough*, 4 F. Supp. 2d at 416 ("Were respondent to flee this jurisdiction with the children prior to this court accomplishing a transfer of physical custody, the very purpose of the Convention and the ICARA would be defeated. This, by definition, is irreparable harm."). Given that Mother has already allegedly wrongfully removed the Children from Mexico, there exists a risk that Mother may leave this jurisdiction with the Children. Father has, therefore, made a clear showing of the likelihood of irreparable harm if temporary relief is not granted.

- **Balancing the equities.**

The Court finds that any threatened harm to Mother is minimal as compared to the probability of irreparable harm to Father. As explained in Father's Memorandum in support of the motion presently before the Court, [Docket Entry # 5-1], Father is ***not*** seeking a permanent custody

order from this Court. He is only seeking a return of the Children to Mexico for a child custody determination. By not asking this Court for a custody determination, as is prohibited by the Hague Convention, the Court finds that Mother does not stand to lose any custody rights in the event that this Court grants the requested relief. *Abbot*, 560 U.S. at 20 ("Ordering a return remedy does not alter the existing allocation of custody rights, but does allow the courts of the home country to decide what is in the child's best interests. It is the Convention's premise that courts in contracting states will make this determination in a responsible manner." (citations omitted)). Furthermore, if this Court grants the relief requested in the Verified Petition, Mother is free to return to Mexico to live with Father and the Children. *See Antonio v. Bello*, No. 04-12794-GG, 2004 U.S. App. LEXIS 18334, at *9 n.4 (11th Cir. June 10, 2004) (per curiam) (noting that the irreparable harm by the abducting parent "is not, as Appellant suggests, that she will lose her child. The return order does not effect any change in custody since Appellant is free to accompany [the child] back to Mexico and assert her custody rights there."). Thus, any harm to Mother is limited and temporary.

- **Public interest.**

The United States Congress has established that:

- "The international abduction or wrongful retention of children is harmful to their well-being.

- "Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention."

- "International abductions and retentions of children are increasing, and only concerted cooperation pursuant to an international agreement can effectively combat this problem."

22 U.S.C. § 9004(a)(1-3). Additionally, the Court recognizes that the Hague Convention is intended "to protect children internationally from the harmful effects of their wrongful removal or retention

and to establish procedures to ensure their prompt return to the State of their habitual residence," *Maxwell*, 588 F.3d at 250, and that this Court is expected to "use the ***most expeditious procedures*** available" to return the Children to their habitual country of residence. Hague Convention, art. 2 (emphasis added). Thus, the public policy is not hindered, but is instead furthered, by the ordering of these provisional measures.

Therefore, the Court finds that the necessary elements of Rule 65, as articulated in *Winter*, have been met, and the Court **GRANTS** Father's request for a Temporary Restraining Order prohibiting the removal of the Children from this Court's jurisdiction.

### c.     Warrant for Physical Custody (S.C. Code Ann. § 63-15-370)

In connection with his request for a temporary restraining order, Petitioner asks the Court to issue a warrant for physical custody pursuant to S.C. Code Ann. § 63-15-370. Petitioner seeks to have his minor children placed in protective custody with the Florence County Department of Social Services ("DSS").

However, before ordering that a child be taken from someone with physical custody of the child, the federal courts must ensure that the requirements of state law are satisfied. 22 U.S.C. § 9004(b).

South Carolina Code § 63-15-370, which is part of the Uniform Child Custody Jurisdiction and Enforcement Act, provides:

> (A) Upon the filing of a **petition seeking enforcement of a child custody determination**, the petitioner may file a verified application for **the issuance of a warrant to take physical custody of the child if the child is immediately likely to suffer serious physical harm or be removed from this State**.

> (B) If the court, upon the testimony of the petitioner or other witness, finds that the child is imminently likely to suffer serious physical harm or be removed from this State, it may issue a warrant to take physical custody of the child. The petition must be heard on the next judicial day after the warrant is executed unless that date is impossible. In that event, the court shall hold the hearing on the first judicial day possible. The application for the warrant must include the statements required by Section 63-15-364(B).
>
> (C) A warrant to take physical custody of a child must:
>  (1) recite the facts upon which a conclusion of imminent serious physical harm or removal from the jurisdiction is based;
>  (2) direct law enforcement officers to take physical custody of the child immediately; and
>  (3) provide for the placement of the child pending final relief.
>
> (D) The respondent must be served with the petition, warrant, and order immediately after the child is taken into physical custody.
>
> (E) A warrant to take physical custody of a child is enforceable throughout this State. If the court finds on the basis of the testimony of the petitioner or other witness that a less intrusive remedy is not effective, it may authorize law enforcement officers to enter private property to take physical custody of the child. If required by exigent circumstances of the case, the court may authorize law enforcement officers to make a forcible entry at any hour.
>
> (F) The court may impose conditions upon placement of a child to ensure the appearance of the child and the child's custodian.

S.C. Code Ann. § 63-15-370 (emphasis added).

According to the Verified Petition, the Mother has family in Florence County, the Grandmother and Aunt of the minor children, who reportedly own a local business. Petitioner alleges the Children have been physically located at addresses in Florence and Darlington, South

15

Carolina beginning some period following their alleged abduction on June 17, 2013. More than one year has elapsed since the minor children were removed from Mexico and it appears the Mother and children may have been residing in Florence County for at least one year. As a result, it is unclear whether the minor children may now be settled in their new environment as contemplated by Article 12 of the Hague Convention.[5]

It is also worth noting that, as counsel acknowledged at the hearing, this is the first case where any court in South Carolina has been asked to apply § 63-15-370 and issue a custody warrant in connection with a return and removal action under the Hague Convention. More importantly, counsel also indicated at the hearing that the South Carolina Department of Social Services did not agree, or at least had reservations, with Petitioner's argument that the federal court had authority to place children in protective custody under § 63-15-370. Additionally, Petitioner could have sought the relief in family court but chose to file his Verified Petition in federal court.[6]

---

[5]     Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith. The judicial or administrative authority, even where the proceedings have been commenced *after the expiration of the period of one year* referred to in the preceding paragraph, *shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment*. Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child. Hague Convention, art. 12 (emphasis added).

[6]     The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention. 22 U.S.C. § 9003(a). "Father requests that the [Family] Court defer jurisdiction to the Federal Court because Father has already instituted an action in that forum." [Docket Entry #10, *Ex Parte* Emergency Order Staying State Court Action and Deferring Jurisdiction to the Federal Court] (stating "the Family Court retains jurisdiction to hear any matters regarding allegations of abuse or neglect of the children").

16

Further, the Uniform Child Custody Jurisdiction and Enforcement Act appears to contemplate the prior existence and violation of an already existing custody order or child custody determination before the issuance of any warrant to take physical custody of minor children. Most of the authorities cited by Petitioner in his memorandum involved a prior child custody determination or custody order that was already in effect. *See Fink v. Walker*, No. 06-cv-807-JPG, 2007 U.S. Dist. LEXIS 1826, (S.D. Ill. Jan. 10, 2007); *Alonzo v. Claudino*, No. 1:06-CV-00800, ECF No. 9 (M.D.N.C. Feb. 9, 2007); *Judge v. Williams*, No. 4:11-CV-119-F, 2011 U.S. Dist. LEXIS 81129 (E.D.N.C. July 25, 2011); *Christie v. Williams*, No. 1:07-cv-682, 2007 U.S. Dist. LEXIS 53117 (E.D. Va. July 18, 2007). In one of the cases cited by Petitioner, it appears the Judge only issued the custody warrant after the parent failed to appear as previously ordered. *See Trudrung v. Trudrung*, 686 F. Supp. 2d 570, 572 (M.D.N.C. 2010). Again, there has been no prior order or child custody determination relative to this case. Based on the above, the Court has reservations as to the propriety of issuing a physical custody warrant for the Children at this juncture. Accordingly, the Court denies Petitioner's request to issue a warrant under the Uniform Child Custody Jurisdiction and Enforcement Act, S.C. Code Ann. § 63-15-370.

**IV.    Motion to Take Judicial Notice of Mexican Law**

The Hague Convention allows courts to "take notice directly of the law of, and of judicial or administrative decisions, formally recognized or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of law." Hague Convention, art. 14; 22 U.S.C. § 9005. Courts around the country have used this authority to take judicial notice of foreign States' laws, especially when determining whether the petitioning parent has "rights of custody" as required by the Hague Convention. *See, e.g.*, *Hirst v. Tiberghien*, 947 F. Supp. 2d 578,

594 n.6 (D.S.C. 2013) (taking judicial notice of the law of the United Kingdom). For that reason, the Court **GRANTS** Petitioner's [Docket Entry #7] Motion to take Judicial Notice of Mexican Law for purposes of granting the Temporary Restraining Order.

V.     **Motion to Seal**

Petitioner has asked that in the event the Court issues the custody warrant, the Court seal the warrant and attached document describing the minor children. For the reasons stated above, the Court declines to issue the custody warrant. Therefore, Petitioner's [Docket Entry #6] motion to seal is **DENIED as moot.**

## ORDER

Accordingly, it hereby is **ORDERED** that Petitioner's [Docket Entry #5] Motion for Temporary Restraining Order and Application for a Custody Warrant and Request for Scheduling of an Expedited Hearing is **GRANTED in part and DENIED in part** as follows:

(1)     **CLAUDIA GARCIA HERNANDEZ is hereby ordered to appear and be physically present at the hearing scheduled in paragraph (3) below** to show cause why she should not be prohibited from removing the minor children from this Court's jurisdiction until this proceeding is concluded. **CLAUDIA GARCIA HERNANDEZ is hereby ordered to bring the Children and any and all passports, identification, and travel documents for the Children** to the hearing scheduled in paragraph (3) below. **IF CLAUDIA GARCIA HERNANDEZ FAILS TO TIMELY APPEAR AT THE HEARING SCHEDULED IN PARAGRAPH 3 BELOW WITH HER CHILDREN AND WITH THE PASSPORTS AND TRAVEL DOCUMENTS REFERENCED ABOVE, OR IF SHE REMOVES THE CHILDREN FROM THE**

**JURISDICTION OF THIS COURT, A WARRANT FOR HER ARREST SHALL IMMEDIATELY ISSUE.**

(2)     **CLAUDIA GARCIA HERNANDEZ is hereby prohibited from removing the Children from the jurisdiction of this Court** pending the preliminary injunction hearing on the Verified Petition, and no person acting in concert or participating with Respondent Mother (including the Children's grandmother, Lorenza Hernández Pérez, and their aunt, Andrea García Hernández) shall take any action to remove the Children from the jurisdiction of this Court pending a determination on the merits of the Verified Petition.  This Temporary Restraining Order shall expire fourteen (14) days from the entry of this Order.

(3)     **A preliminary injunction hearing** on the Verified Petition is hereby scheduled to be held on **Thursday, November 6, 2014 at 9:30 a.m. in Courtroom 1 of the McMillan Federal Building located at 401 West Evans Street, Florence, South Carolina 29501.**  A final merits hearing on the matter will be scheduled by the Court at that time.

It is further **ORDERED** that Petitioner's Application for a Custody Warrant is **DENIED**.

It is further **ORDERED** that Petitioner's [Docket Entry #6] Motion to Seal is **DENIED as moot**.

It is further **ORDERED** that Petitioner's [Docket Entry #7] Motion to Take Judicial Notice of Mexican Law is **GRANTED** for the purpose of this Temporary Restraining Order.

It is further **ORDERED** that counsel for Petitioner is directed to obtain a translation (from English to Spanish) of this Order immediately.  Once the translation is obtained, counsel for Petitioner is directed to file the translation together with a certificate from the translator certifying that the translation is fair and accurate.  Upon filing of the translated Order and certificate by the

translator, counsel for the Petitioner should serve Respondent immediately with all filings as well as this Order.

It is further **ORDERED** that the Clerk of Court shall have an interpreter assigned for each hearing scheduled in this matter.  The Clerk shall also send a copy of this Order to the Family Court for the Twelfth Judicial Circuit.

**IT IS SO ORDERED**.

<u>s/ R. Bryan Harwell</u>
R. Bryan Harwell
United States District Judge

October 30, 2014 at 4:30 P.M.
Florence, South Carolina