UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Fernando Contreras Alcala, | ) | Civil Action No.: 4:14-cv-04176-RBH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Claudia Garcia Hernandez, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court on Petitioner Fernando Contreras Alcala's motion to alter or amend the judgment [ECF #83], motion for free trial transcripts pursuant to 28 U.S.C. § 753(f) [ECF #84], and motion to restore injunction pending appeal [ECF #86]. Respondent filed a response opposing each of Petitioner's motions.

**Factual and Procedural Background**

This case was initiated by Petitioner, who filed a Verified Petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9011. Petitioner alleged that Respondent wrongfully removed the couple's minor children from their habitual state of residence in Mexico and illegally entered the United States with the minor children. Petitioner sought the return of the minor children to Mexico through the remedies provided under ICARA. After a bench trial held on May 11-12, 2015, the Court issued Findings of Fact, Conclusions of Law, and an Order. The Court found that the Petitioner had established a *prima facie* case of wrongful removal under the Hague Convention. Despite their wrongful removal, the Court found that the minor children were well-settled in their new environment. The Court declined to exercise its

discretion to order the minor children returned to Mexico and denied Petitioner's verified petition for return of the minor children to Mexico.

Petitioner timely filed a motion to alter or amend the Court's Findings of Fact, Conclusions of Law, and Order under Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure. Petitioner asks the Court to amend its Findings of Fact pursuant to Rule 52(b) "to reflect or clarify certain factual testimony or evidence presented at trial." Petitioner also requests that the Court amend its judgment and return the minor children to Mexico in order to correct a clear error of law or prevent manifest injustice under Rule 59(e).

Petitioner requests that the Court restore the preliminary injunction order issued on November 7, 2014, that prevented Respondent from leaving the district with the minor children while the case was pending. Petitioner moves for the reinstatement of the injunction order through the pendency of an expedited appeal.

Lastly, Petitioner requests that the Court enter an order permitting costs of the transcript in this case to be paid by the United States pursuant to 28 U.S.C. § 753(f).

## Standard of Review

Fed.R.Civ.P. 52(b) provides that "on a party's motion filed no later than 28 days after entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b). "The primary purpose of Rule 52(b) is to ensure that the trial court's findings of fact and legal reasoning are clear ... not to allow a party a second opportunity to prove its case." *Haberen v. Kaupp Vascular Surgeons, Ltd.*, 151 F.R.D. 49, 50–51 (E.D.Pa.1993). "A Rule 52(b) motion to amend findings ... is not intended to allow parties to relitigate old issues, to advance new theories, or to rehear the merits." *Diebitz v. Arreola*, 834

F.Supp. 298, 302 (E.D.Wis.1993). "[A] Rule 52(b) motion is intended to correct manifest errors of law or fact or to present newly discovered evidence." *U.S. v. Carolina E. Chem. Co., Inc.*, 639 F. Supp. 1420, 1423 (D.S.C. 1986).

Motions under Rule 59 of the Federal Rules of Procedure are not to be made lightly; "reconsideration of a previous order is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." 12 James Wm. Moore et al., Moore's Federal Practice ¶ 59.30[4] (3d ed.); *see also Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir.1998) ("In general, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." (internal quotations and citations omitted)). The Fourth Circuit has held such a motion should be granted for only three reasons: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence; or (3) to correct a clear error of law or prevent manifest injustice. *Collison v. Int'l Chem. Workers Union*, 34 F.3d 233, 235 (4th Cir.1994) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993)). Rule 59 motions "may not be used to make arguments that could have been made before the judgment was entered." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir.2002). Nor are they opportunities to rehash issues already ruled upon because a litigant is displeased with the result. *See Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir.1993) (stating that "mere disagreement does not support a Rule 59(e) motion") (citation omitted).

## Analysis

### I.    Motion to Amend Findings of Fact and Judgment under Rules 52(b) and 59(e)

Petitioner requests that various findings of fact be amended and the judgment amended accordingly under Rules 52(b) and 59(e).  In particular, Petitioner asks for amendments to

3

paragraphs 13, 15, 17-n.4, 21, 22, 24, 25, and 28 of the Court's Findings of Fact, Conclusions of

Law, and Order [ECF #81].  Petitioner also requests that the Court include an additional finding "to

explain that the reason for a majority of the delays in the litigation were due to Respondent's failure

to retain counsel."  Petitioner also argues the Court committed clear error of law by relying on

family members' business ownership as evidence that the minor children were well-settled and that

Petitioner will suffer manifest injustice if the Court declines to exercise its discretion and return the

minor children to Mexico.

Finding of Fact, Paragraph 13 - Petitioner requests that the finding be amended to include

Respondent's testimony that she was saving money to take the minor children to the United States

without Petitioner's knowledge and that she eventually snuck out of the family's house with the

Children.  The Court's Finding of Fact, paragraph 13, states "Since Petitioner did not want to move

to the United States, Respondent began preparing to move to the United States with her minor

children, with or without Petitioner."  Petitioner's requested amendment to paragraph 13 is not

necessary to correct a manifest error of law or fact and is DENIED.

Finding of Fact, paragraph 15 - Petitioner requests that the finding be amended to include

that Petitioner filed his Hague application on August 12, 2013 at the direction of the local Mexican

officials who could not locate Respondent or the Children in Mexico.  The Court's Finding of Fact,

paragraph 15, states:

> Petitioner made a complaint to the authorities and provided a
> statement on June 18, 2013.  Petitioner told the authorities that
> Respondent had been telling him that she wanted to move to the
> United States with the minor children and that her mother, who
> already lived in the United States, had been making arrangements
> for the move.  Petitioner completed an application for Hague Relief
> on or about August 20, 2013, in which he listed Florence, South

4

Carolina, United States as the minor children's probable location. There was no testimony from any local Mexican officials that they instructed Petitioner to file his Hague application on August 12, 2013, and a review of Petitioner's testimony reflects that Petitioner did not offer a reason for his August 12, 2013 filing date for his Hague application. Petitioner's request to amend paragraph 15 is DENIED.

Finding of Fact, paragraph 17, footnote 4 - Petitioner requests that the finding be amended to state that neither Respondent nor the Children are eligible for DACA status for various reasons. Footnote 4 simply provides general background information on the Deferred Action for Childhood Arrivals (DACA) program available on the United States Citizenship and Immigration Services website. The Court addressed Respondent's DACA status in Paragraph 27 of the Court's Findings of Fact, which states that "Respondent, her mother, Jose Vasquez and Gustavo Vasquez Maas all admitted that they are in the United States illegally and do not have DACA status." The fact that the minor children are not eligible for DACA status is evident from the requirements of the DACA program as stated in footnote 4. The Court's failure to explicitly state that the minor children are not eligible for DACA status does not constitute a manifest error of law or fact justifying amendment of the Court's Order. Petitioner's request to amend paragraph 17, footnote 4 is DENIED.

Finding of Fact, paragraph 21 - Petitioner requests that the finding be amended: 1) to state that Respondent and the minor children moved in with Mr. Vasquez and his father; 2) to state that neither Mr. Vasquez or his father are eligible for DACA status; and 3) to state that Mr. Vasquez and his father have no enforceable legal obligation to support the minor children. The Court's Finding of Fact, paragraph 21 states:

> Respondent met her boyfriend, Jose Vasquez, sometime in 2013.
> Mr. Vasquez is also in the United States illegally and does not have
> work authorization, residency authorization, DACA status, or a
> driver's license. Mr. Vasquez moved in with Respondent and the
> minor children in February of 2014. The testimony from
> Respondent's witnesses reveals that Mr. Vasquez and Respondent
> are involved in a stable, loving relationship and that they
> eventually plan to marry. Respondent's older sister described their
> relationship as loving and very supportive.

At paragraph 23, the Court noted that Respondent and the minor children resided with Mr. Vasquez

and his father.  At paragraphs 21 and 27, the Court noted that neither Mr. Vasquez or his father were

eligible for DACA status.  The Court's Findings of Fact do not suggest that Mr. Vasquez or his

father are bound by any legal obligations to the Respondent or the minor children.  The

uncontradicted testimony is that Respondent and Mr. Vasquez are in a stable, loving relationship

and that they eventually plan to marry.  Mr. Vasquez appears to love and care for the minor children

a great deal and has developed such a strong bond with F.C.G. that F.C.G. originally identified Mr.

Vasquez as his father in the forensic interview.  Petitioner's requested amendment to paragraph 21

is not necessary to correct a manifest error of law or fact and is DENIED.

Finding of Fact, paragraph 22 - Petitioner requests that the finding be amended: 1) to reflect

that F.C.G. also had four additional absences from Brockington Elementary during the Fall 2014

school year; and 2) to omit the speculation from Valerie Smith on F.C.G.'s upcoming test scores

because a valid objection was made to this testimony and sustained by the Court.  The Court's

Findings of Fact, paragraph 22 states:

> F.C.G. finished the 2013-2014 school year at Brockington
> Elementary. While enrolled at Brockington during the spring of
> 2014, F.C.G. was absent from school eight days. Each of these
> absences was unexcused. F.C.G. made decent grades and worked
> with the English for Speakers of Other Languages ("ESOL")

> program at the school. Although he began to make progress in the
> ESOL program, F.C.G.'s English proficiency was graded as "Level
> 1: Pre-Functional" on the spring 2014 English Language
> Development Assessment, the State's standardized English
> proficiency test administered by the school. Additionally, F.C.G.
> was graded as not meeting the State's testing standards for math
> and science based on the school's spring 2014 standardized PASS
> test. The testimony also reflects that neither of these tests were his
> most recent tests. The results of the spring 2015 examinations were
> not available at the time of trial. Valerie Smith, the ESOL director
> at St. John's Elementary, testified on cross-examination that she
> would not be surprised if F.C.G.'s 2015 test scores were
> substantially improved from his 2014 scores.

Despite F.C.G.'s additional absences in the Fall 2014 school year, there was no indication

that these absences affected F.C.G.'s school performance, his acclimatization to his school, or that

these absences were overly excessive on the average.  Overall, F.C.G. consistently attended school,

received good grades, has a number of friends, and receives no special accommodations, according

to the testimony of his most recent teacher, Mr. Rogers.  Accordingly, amending Finding of Fact,

paragraph 24, to emphasize F.C.G.'s unexcused absences is not necessary to correct a manifest error

of law or fact.  As to Valerie Smith's testimony on cross-examination, the record does not reflect

that Petitioner objected to any portion of her testimony.  Petitioner's request to amend Finding of

Fact, paragraph 22, is DENIED.

Finding of Fact, paragraph 24 - Petitioner requests that the finding be amended to state that

F.C.G.'s report card also indicates that he had nine unexcused absences at St. John's Elementary.

The Court's Finding of Fact, paragraph 24 states:

> F.C.G. transferred to St. John's Elementary in November of 2014.
> At the time of trial, F.C.G. was still enrolled in the fourth grade at
> St. John's Elementary. His most recent report card was placed into
> evidence and shows that he made all As and Bs in the second and
> third quarter. The first quarter F.C.G. made a C in science and

math. Grades for the fourth quarter were not available at the
time of trial. While there was testimony that F.C.G. remains
enrolled in the ESOL program, the ESOL director Valerie Smith
testified that she only meets with F.C.G. for approximately thirty
(30) minutes per week. Ms. Smith further testified that the amount
of time spent with each child in the  ESOL program is based upon
her availability and her assessment of the child's needs. Ms. Smith
likewise testified that ESOL students in general are given certain
accommodations, such as open book tests, the ability to retake
tests, and they are essentially graded on a curve. However, Mike
Rogers, who is the only fourth grade teacher of F.C.G. to provide
testimony at trial, indicated that F.C.G. was in his English and
Language Arts classes for approximately two hours per day and
was treated no differently than any other non-ESOL student.
Specifically, Mr. Rogers testified that F.C.G. was not receiving
accommodations, such as open book tests or the ability to retake
tests, in his class. Mr. Rogers further testified that he had no
difficulty communicating with F.C.G. in English and that F.C.G.
got along well with all of the other children in his class. Mr.
Rogers further testified that F.C.G. made an A in the third quarter
and that he anticipated that F.C.G. would also make an A in the
fourth and final quarter of the school year in his English and
Language Arts class.  Although the ESOL director testified that it
may take years for a student to fully comprehend academic
language which is necessary for analytical thinking, that testimony
is undermined to some extent and the Court cannot ignore the fact
that F.C.G. is making As in his English and Language Arts classes
without any special accommodations.

Because there is no indication that the unexcused absences affected F.C.G.'s school performance, his acclimatization to his school, or that these absences were overly excessive on the average, amending Finding of Fact, paragraph 24, is not necessary to correct a manifest error of law or fact.  Petitioner's request to amend Finding of Fact, paragraph 24, is DENIED.

Finding of Fact, paragraph 25 - Petitioner requests that this finding be amended to state that Ms. Ramirez testified that Torre Fuerte Church's congregation is predominantly Hispanic and the services are conducted in Spanish.  The Court's Finding of Fact, paragraph 25 stated:

> Respondent testified that she and the children have consistently
> attended church at the Torre Fuerte Church. Evelia Ramirez, a
> member of Torre Fuerte Church, testified that Respondent, Jose
> Vasquez, and the children attend services almost every Wednesday,
> Saturday, and Sunday. Ms. Ramirez further testified that she
> watches F.C.G. and A.C.G. during church services, along with
> other children of the church, and that F.C.G. and A.C.G. appear
> eager to learn and get along well with the other children at the
> church. Respondent testified that she and the children have
> developed a supportive network of friends through the church.

The fact that this local church is predominantly Hispanic and conducts services in Spanish does not mean that the minor children's regular attendance at the local church does not militate in favor of a finding of well-settled.  Petitioner offers no authority for the proposition that the minor children must assimilate in a church of a certain denomination or that services must be provided in a certain language.  Petitioner's requested amendment to Finding of Fact, paragraph 25, is not necessary to correct a manifest error of law or fact and is DENIED.

Finding of Fact, paragraph 28 - Petitioner requests that this finding be amended to indicate that while F.C.G. stated that he did not trust Petitioner, it was because Petitioner told him he would be given his own room, but never did.  The Court's Finding of Fact, paragraph 28 states

> The Court had the opportunity to review the forensic interview of
> F.C.G. F.C.G. communicated throughout the interview entirely in
> English, with the exception of one word, and without the assistance
> of the interpreter. F.C.G. was questioned about several individuals
> in his life, including Petitioner, Respondent, Jose Vasquez, and
> Gustavo Vasquez Maas. F.C.G. initially referred to Jose Vasquez
> as his dad. F.C.G. later stated that Petitioner was his father, that
> Jose was his step-father, and that Gustavo was a step-grandfather.
> F.C.G. also stated that he wanted to remain living in the United
> States with Respondent. F.C.G. stated that he did not want to
> return to live in Mexico. When answering questions about life in
> Mexico, F.C.G. stated that he did not have many friends, that he
> was not allowed to have fun, that Petitioner would never play with
> him, that Petitioner would never let F.C.G. go outside to play, that

9

> Petitioner did not help F.C.G. with his homework, that he did not
> have his own bedroom in Mexico, and that F.C.G. did not trust
> Petitioner. F.C.G. also stated that he did not have toys, clothes, or
> shoes in Mexico. At times, F.C.G could be seen fighting through
> tears when talking about life in Mexico. F.C.G. stated that
> every day was the same when living in Mexico. When asked about
> the United States, F.C.G. stated that he has friends and toys, that
> Respondent and Jose Vasquez help him with his homework, and
> that he has several family members living near him.

The Court reviewed F.C.G.'s forensic interview.  In the interview, F.C.G. did not solely base

his distrust of Petitioner on the fact that he did not receive his own room as promised.  F.C.G. stated

that he  "always tells his dad that he wanted something but he never gives it to me or my mom."

Towards the end of the interview, F.C.G. is asked about his earlier statement that he did not trust his

dad.  In response, he tearfully says that he is not just worried about himself but that he is worried

that his younger brother will be treated the way he was treated.  From a review of the forensic

interview in its entirety, the Court cannot conclude that F.C.G. limited his stated distrust of

Petitioner to the failure to provide F.C.G. with his own room.  Petitioner's requested amendment to

Finding of Fact, paragraph 28, is not consistent with the evidence and is DENIED.

Finally, Petitioner requests that the Court include an additional finding to explain that the

reason for a majority of the delays in the litigation were due to Respondent's failure to retain

counsel until the eve of trial.  Petitioner filed his complaint on October 27, 2014.  Respondent was

served November 3, 2014.  The Court held a preliminary injunction hearing on November 6, 2014,

wherein the Respondent was *pro se* and the Court advised Respondent to seek counsel at S.C. Legal

Services.  On December 9, 2014, slightly more than one month after Respondent was served with

the Petition, the Court appointed counsel to represent Respondent in the matter.  Counsel for

Petitioner did not object to the appointment of counsel for Respondent.  On December 22, 2014, the

Court held a telephone conference wherein counsel for both Petitioner and Respondent discussed an earliest possible trial date. On January 5, 2015, counsel for both Petitioner and Respondent filed a Joint Stipulation stating "[t]he parties will be prepared to proceed to trial by February 23, 2015." Due to scheduling conflicts, the Court was unable to hold the trial in February of 2015. On March 20, 2015, counsel for Petitioner submitted to Chambers via email a Proposed Scheduling Order setting the trial of this case for May 11, 2015, which is the date the Court held the trial. Petitioner's requested additional finding is not accurate and is DENIED.

Because of the requested amended findings, Petitioner argues that the Respondent is unable to meet her burden of proof under the "well-settled" affirmative defense. To establish the well-settled defense, Respondent must prove by a preponderance of the evidence that (a) the child is "well-settled" in his new environment and (b) Petitioner initiated judicial proceedings under the Convention more than one year after the wrongful removal. *Belay v. Getachew*, 272 F. Supp. 2d 553, 560-61 (D.Md. 2003). In determining whether the child is well-settled, courts have considered the following non-exhaustive list of factors: (1) the age of the child; (2) the stability of the child's residence in the new environment; (3) whether the child attends school or day care consistently; (4) whether the child attends church or participates in other community or extracurricular school activities regularly; (5) the respondent's employment and financial stability; (6) whether the child has friends and relatives in the new area; and (7) the immigration status of the child and respondent. *Lozano v. Alvarez*, 697 F.3d 41, 57 (2d Cir. 2012), *aff'd*, 134 S.Ct. 1224 (2014).

The Court found that the minor children were well-settled in their new environment, despite their immigration status, based on the stability of the minor children's residence, the minor children's adoption of the English language, church attendance, Respondent's employment and

financial stability, and the network of family and friends in the new area.  The Court did not

consider the mere passage of time as a factor in support of finding the minor children were well-

settled.

Petitioner argues the minor children's minimal ties to their most recent school do not

evidence their significant connections to the United States.  Petitioner argues that F.C.G. was

subjected to instability as evidenced by his 29 unexcused absences over the course of five quarters at

school and the fact that he attended three separate schools in fourteen months.  As stated above,

there was no evidence that F.C.G.'s unexcused absences affected his school performance, his

acclimatization to his school, or that these absences were overly excessive on the average.  Further,

there was testimony that unexcused absences would not cause a child to be held back in elementary

school if that child also had good grades, as did F.C.G.  As to attending three separate schools in

fourteen months, Petitioner has not demonstrated how the Court's conclusion that the moves were

reasonable under the circumstances equates to a manifest error of law or fact.

Petitioner argues that F.C.G.'s ability to converse in English does not prove Respondent's

case.  However, the Court did not rely solely on F.C.G.'s ability to converse in English to conclude

that the minor children were well-settled.  It was but one in a multitude of facts the Court took into

consideration.

Petitioner argues that the minor children's attendance at Torre Fuerte Church does not

illustrate significant connections with the United States because the church is predominantly

Hispanic and conducts its services in Spanish.  As stated above, the fact that this local church is

predominantly Hispanic and conducts services in Spanish does not mean that the minor children's

regular attendance at the local church does not militate in favor of a finding of well-settled.

12

Petitioner argues the Court committed clear error of law by relying on family members' business ownership as evidence that the minor children are well-settled. Petitioner, however, takes the Court's reference to businesses operated by the minor children's aunts out of context. The reference was merely to illustrate the point that it is highly unlikely that the minor children will face deportation anytime soon. *See* Conclusion of Law, paragraph 22.

Finally, Petitioner argues that he will suffer manifest injustice absent the Court exercising its discretion to return the minor children to Mexico. Petitioner argues that "[i]f this Court declines to amend the judgment to require the Children to return to Mexico, it would be tantamount to imposing the equivalent of the death penalty to Petitioner's *de facto* and *de jure* parental rights." The Court found that the minor children's need for contact with the Petitioner, and the Petitioner's need for contact with the minor children, did not outweigh the minor children's interest in remaining in their new environment. The Court further noted that the decision not to return the minor children was not a custody determination or a ruling that the Petitioner should not have contact with the minor children. Rather, the Court's ruling was merely a decision that any custody determination should be made by a court in South Carolina, as opposed to Mexico. The Court is not convinced that Petitioner, who retained the pro bono services of one of the state's top law firms for this case, will be unable to find the resources to institute custody proceedings in South Carolina.

Based on all of the evidence and testimony, and a consideration of each of the factors identified in *Lozano*, Respondent met her burden of proving that the minor children were well-settled in their new environment by a preponderance of the evidence. Petitioner has failed to set forth an adequate basis on which to obtain relief under Rules 52(b) or 59(e). Accordingly, Petitioner's motion to alter or amend the judgment pursuant to Rules 52(b) and 59(e) is DENIED.

## II.     Motion to Restore Injunction Order Pending Appeal

Petitioner requests, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure, that the

Court restore the injunction prohibiting Respondent from removing the minor children from the

jurisdiction pending appeal.  Rule 62(c) provides that "[w]hile an appeal is pending from an

interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may

suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the

opposing party's rights." Fed. R. Civ. P. 62(c).  In determining whether to grant or restore an

injunction pending appeal, the court considers four factors: (1) whether the applicant has made a

strong showing he is likely to succeed on the merits; (2) whether the applicant will be irreparably

injured absent an injunction; (3) whether an injunction will substantially injure the other party; and

(4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724

(1987); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 513 (Fed.Cir.1990); *E.I.*

*DuPont de Nemours and Co. v. Kolon Industries, Inc.*, 871 F. Supp. 2d 513, 518 (E.D.Va. 2012);

*Par Pharmaceuticals, Inc. v. TWI Pharmaceuticals, Inc.*, Civil No. CCB-11-2466, 2014 WL

3956024, at *1 (D.Md. Aug. 12, 2014).  Each factor need not be given equal weight. *Standard*

*Havens Prods.*, 897 F.2d at 512. Instead, the court assesses the "movant's chances for success on

appeal and weighs the equities as they affect the parties and the public." *Id*. at 513 (quoting *E.I.*

*Dupont de Nemours & Co. v. Phillips Petroleum*, 835 F.2d 277, 278 (Fed.Cir. 1987)); *see also*

*Hilton*, 481 U.S. at 777.

Petitioner's motion to restore the injunction critically fails to address the likelihood of

success on the merits of the appeal, a key factor in the Court's analysis under Rule 62(c).  As to

whether Petitioner will face irreparable injury absent an injunction, Petitioner fails to make the

14

requisite showing because there is no evidence to suggest that Respondent and the minor children plan to leave the jurisdiction.  On the other hand, if the Court were to grant the injunction, the Respondent and minor children could face potential harm by the unnecessary restriction on their ability to travel out of the district - a distance of no more than approximately forty miles.  Finally, denial of Petitioner's request for an injunction pending appeal would not offend the public interest. For those reasons, Petitioner's motion to restore the injunction pending appeal is DENIED.

### III.    Motion for Payment of Transcript Costs - 28 U.S.C. § 753(f)

Petitioner moves for an order permitting costs of the transcript in this action to be paid by the United States pursuant to 28 U.S.C. § 753(f).  Pursuant to 28 U.S.C. § 753(f), "Fees for transcripts furnished . . . to persons permitted to appeal in forma pauperis shall . . . be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)."  The standard for determining whether an appeal is not frivolous but presents a substantial question for the purposes of Section 753(f) is whether the issue on appeal "judged on an objective basis, is a question which is 'reasonably debatable.' " *Harlem River Consumers Cooperative, Inc. v. Associated Grocers of Harlem, Inc.*, 71 F.R.D. 93, 97 (S.D.N.Y. 1976).  An additional factor is whether the transcript is necessary for the presentation of the appeal. *Id*. at 97-98 and n.7.  Section "753(f) contemplates that the appeal already has been certified In forma pauperis and authorizes determination at that point of whether a free trial transcript is warranted on the ground that 'the appeal is not frivolous (but presents a substantial question).'" *Linden v. Harper & Row Inc.*, 467 F. Supp. 556, 558 (S.D.N.Y. 1979); *see also Gill v. Neaves*, 657 F. Supp. 1394, 1401 (W.D. Tex. 1987) (stating there is no statutory authority to provide a transcript prior to an appeal).

In this case, Petitioner has yet to file a notice of appeal or have his appeal certified *in forma pauperis*. As a consequence, Petitioner's motion for free trial transcripts is premature. The Court will reconsider a motion for trial transcripts pursuant to 28 U.S.C. § 753(f) once a notice of appeal has been docketed. Petitioner's motion is DENIED without prejudice with leave to refile.

## Conclusion

For the reasons stated above, Petitioner Fernando Contreras Alcala's motion to alter or amend the judgment [ECF #83] is **DENIED**. Petitioner's motion to restore injunction pending appeal [ECF #86] is **DENIED**. Petitioner's motion for trial transcripts pursuant to 28 U.S.C. § 753(f) [ECF #84] is **DENIED without prejudice with leave to refile**.

**IT IS SO ORDERED**.

November 19, 2015                                          s/ R. Bryan Harwell
Florence, South Carolina                              R. Bryan Harwell
                                                                  United States District Judge